524-0413, Peekle v. Benjamin Mann 524-0413, Peekle v. Benjamin Mann 524-0413, Peekle v. Benjamin Mann 524-0413, Peekle v. Benjamin Mann 524-0413, Peekle v. Benjamin Mann 524-0413, Peekle v. Benjamin Mann Mr. Mann then steps away from the car onto the public sidewalk so as not to interpose between the approaching officer and Ms. Bradley. And he does this without being asked. As Officer Valante approaches, he requests that Mr. Mann step back further from the vehicle, to which Mr. Mann declines. Officer Valante, in response to that refusal, threatens Mr. Mann with arrest. This is five seconds into their interaction. In response to something that he believed, his conduct that he believed was lawful, he's being threatened with arrest. Mr. Mann started to use abusive and profane language to express his frustrations. Officer Valante himself testifies that Mr. Mann was at least five or six feet away from him. But Officer Valante never testifies that he felt that his safety or his life was being threatened by Mr. Mann's conduct. While he argued with Mr. Mann, Officer Valante was able to obtain Ms. Bradley's license, emphasizing that despite Mr. Mann's language, Officer Valante was able to conduct the traffic stop. After 60 seconds of argument, but prior to obtaining Ms. Bradley's insurance, Officer Valante chose to arrest Mr. Mann, despite the fact that officers had just arrived. While Mr. Mann is being arrested, Ms. Bradley steps out of her vehicle and begins filming the arrest before she then is also arrested. Officer Valante testified that after arresting Mr. Mann, he was unable to go back to the traffic stop because of the actions of Mrs. Bradley. And those actions cannot be attributed to Mr. Mann. For 15 minutes then, Mr. Mann and Ms. Bradley are sitting in separate squad cars, detained. At no point during those 15 minutes does Officer Valante attempt to re-engage that traffic stop, to complete the traffic stop. In other words, nothing obstructed Officer Valante. He chose not to finish the traffic stop. What we don't have here is a high-tension situation where the threat to officer safety is high. The traffic stop took place on a well-lit street on the side of the road. There was nothing to indicate that Mr. Mann or Ms. Bradley had weapons. And Officer Valante testified that Mr. Mann was 5 to 6 feet away, which is not close enough, such that Officer Valante feared the security of his own weapon. If Officer Valante wasn't here, of his safety or his life, because of the conduct of Mr. Mann, he would have testified as such. And in fact, the trial court found that Mr. Mann's conduct neither threatened nor caused physical harm to another. This leaves us with only argument for a very short period of time, approximately 60 seconds. Put differently, Mr. Mann's conduct was an insubstantial display of antagonism or belligerence. That alone is insufficient to constitute the offense of obstructing a peace officer. If there are no questions on any of the issues, I will reserve any further remarks for rebuttal. No questions. I do want you to clarify. You're not arguing that obstruction requires a physical threat to the police officer? No, I'm not arguing that obstruction requires a physical threat. What I read, and we'll have a response here, what I read in the briefs was that it was a claim that his dealing with, I can't think of her name, Bradley, that his dealing with Bradley was the nature of the obstruction. You're talking about he could not deal with Bradley because of Mann's action, correct?  What do you make of the issue, I should say this, how do you view the issue of the consistent remarks by Mr. Mann that he was turning this into a lawsuit, that he was going to sue? Just as they are. It's language. It's mere argument. Does that bear any indication that he deliberately was attempting to provoke a response from the officer? Well, Your Honor, I think Mr. Mann was expressing his frustrations. He was put into a situation immediately where he's being confronted with arrest for something that he doesn't believe warrants arrest. Regardless of whether that's a reasonable belief on his part, he is allowed to argue with the police officer, and that's all he did was argue. All right, thank you. One of the things that you asked for is appointment of counsel on a crankle hearing. Don't you think he had a crankle hearing? Your Honor, that third issue is an argument that he showed possible neglect. He should receive that the initial preliminary crankle inquiry was held, but he showed possible neglect with his claims, and so counsel should have been made. Correct. And then an amended post-trial motion would be filed. Correct. Okay. Any other questions? No questions. Just a second. No, thank you. Okay, you will have a few minutes after we hear from the State to respond. Okay? But for right now, no further questions. Thank you, Your Honor. Okay. The State. Your Honor. Chief Justice, Your Honors, and may it please the Court. My name is Louis Hizzo, and I represent the State on this matter. This Court should affirm the defendant's convictions for the obstruction of a peace officer for three reasons. All three have been highlighted in our brief. Whichever arguments I don't get to at this point, I would just rest wholly on what we've previously annotated. But as to the defendant's first claim that he has presented this afternoon, the evidence here was more than sufficient that was presented at trial to convict the defendant beyond a reasonable doubt. And why is that? What facts do you have that are different than his? Your Honor, as to, and I know that the defendant has taken a stance here to indicate that he was just advocating or showing mere words to express himself during the interaction. Given the context of what occurred here, I think that absolutely minimizes not only the continuous threat that Officer Vellante faced during the traffic stop, but also just the entire interaction. It's completely diminished by just categorizing it as just mere argumentative actions towards the officer. That's simply not true. Well, is the inquiry the subjective belief of the officer, or is it an objective standard? For the inquiry specifically for the obstruction? Does the police officer have to feel threatened for there to be obstruction? Your Honor, I'm actually blanking on whether or not it's objective or objective at this time, and I do apologize. If this Court would allow, I would like to subject that answer supplementarily. But it's our stance, Your Honor, that it's a reasonable officer in this situation. So it would be objective? Yes, Your Honor. But did the officer in this case testify that he felt threatened? The officer's specific testimony, Your Honor, indicated that when he was approached, and I quote, the defendant approached the vehicle and walked past me, and that's when I initially asked him to step back. He said he would not, that this is a public sidewalk. And then he repositioned himself to even slightly even just in front of me at the vehicle, and then he moved to a different position. Now, what is further added by the officer who says how he felt about it or how he interfered? The officer talks about the interference with regards to how the subsequent video is later admitted. He goes into that a little bit more, and I do address that in the second issue, because he talks about how he's unable to complete the traffic stop as a whole with Mrs. Bradley due to the fact that he had to shift his focus from Mrs. Bradley to the defendant. Specifically, what we would like this Court to take critical notice of is People's Exhibit 1 that absolutely displays the entire ordeal. There's no question here that the defendant was not only antagonizing the officer at the time, but he was yelling at him, berating him, and standing so close that any reasonable officer would have shifted their focus from that stop to address the defendant. And once the backup officers arrive to assist Officer Galanti, he feels comfortable enough to then engage with the defendant, and then the arrest is made in honor. I know the defendant tries to allude to that there was a 15-minute gap between that ordeal and when Mrs. Bradley is essentially released, or there's an abandonment that he essentially alludes to, but that's simply not true. The Officer Galanti in the video is heard saying, I did not complete the traffic stop with Mrs. Bradley, and then he's heard asking questions about what to do about that, and ultimately Mrs. Bradley is let go without any citation for the stop, which is absolutely, again, critical to whether or not the obstruction was material. And I know that there's an emphasis on the officer's testimony, but we believe that the best evidence with regards to this issue here is the People's Exhibit 1 that shows the ordeal from start to finish. How close was he to the officer? Your Honor, there's no specific mention within the record whether he was 5 feet or 4 feet. Again, the video shows that he was relatively close. You see a sidewalk, you see the car that's pulled up on the curb, and then the officer's in between the sidewalk and the curb vehicle, and the defendant is behind him, close enough that when Officer Galanti turns his camera, you can see the defendant, his actions, holding the cell phone up towards him, and just his facial aggression towards the officer at the time of the interaction. The defendant testified he was 8 to 9 feet away. You think the video shows something else? I think the video shows that it is a lot closer than 8 to 9 feet away, Your Honor. The problem with videos is we don't have the testimony to go with it that gives us the answer to that, right? That's correct, Your Honor. Why do you think the officer left the scene of the stop to arrest this man? Your Honor, when Officer Galanti is seen in the video asking Mrs. Bradley for insurance, the insurance card, the tense and aggression that the defendant is showing, yelling at Mrs. Bradley not to do it, and essentially just being aggressive towards the officer, any reasonable officer at that point would have disengaged with Mrs. Bradley, considering the context of what was going on between the person standing directly behind him and the individual that he's trying to assess with the traffic stop. I think that it's very clear that the video shows it's not just the level of antagonism. The context given here provides that the officer was assessing that the person behind him was a bigger threat than the traffic stop that he had made. And that's ultimately why the State's position is that the obstruction was absolutely a material effect here. Is yelling at a police officer and antagonizing him, as you say, enough for obstruction? It's a very specific analysis, Your Honor. What does the jury instruction say for obstruction, do you know? I don't have it directly in front of me right now, Your Honor. Okay, so what has to be proved for obstruction? The three elements, Your Honor, that the State's required to prove here is that the defendant knowingly obstructed the peace officer. What does the word obstruction mean? From my point of view, Your Honor, it means to impede somebody's ability to do something. Okay, do you have a case that says what obstruction is? Not that we have cited within the briefs, Your Honor. Okay. It's the State's understanding that the issue specific here was whether it was material in fact, Your Honor, so a lot of our focus that we directed from our side, our attention, was specific to cases regarding materiality, Your Honor. What do you mean, materiality? Under pupil v. Maynard that we have cited, 2020, Illinois at 3D, under paragraph 26, materiality, and I quote, impedes or hinders the officer's performance in his authorized duties. One of the factors in that case is the length of any delay or the brevity of any impediment. Yes, Your Honor. Correct? Yes, Your Honor. What are other factors that you would rely on to convict from the State's perspective in that? Your Honor, the second portion of that, which would be the nature of the defendant's actions. Again, I understand that it's a very fact-specific analysis, and that case makes it very clear between paragraphs 32 and 34 that the analysis is, as we've stated, fact-dependent. And here, given the context of why Officer Vellante needed to shift his focus from Mrs. Bradley, we believe that there was more than enough for that material impediment. Do you know how long this entire stop to arrest lasted? I mean, it was like two and a half minutes, wasn't it? It was relatively short, Your Honor. Yes. Between the time that Officer Vellante arrives and when the arrest was actually made, it was a relatively short time frame, and we do admit that within our brief as well. Your Honor, we would ask this Court to affirm the defendant's conviction for an obstruction of peace officer, and I would reserve my time for any other questions. No, thank you. No questions. No questions, thank you.  Okay, Mr. Hughes-Donovan. Revelle. Do you know what the elements of this crime are? Yes, Your Honor. So the elements of obstructing a peace officer are knowledge that who you are engaging with is a peace officer. The peace officer is engaging in an authorized act. Is there any doubt here that this person that was making the arrest was a police officer? No. No, Your Honor. We don't contest that. We also don't contest that Officer Vellante was engaging in an authorized act, traffic stop of Mrs. Bradley. What we contest is that my client was a material obstruction in the officer's completion of that authorized act. So the State just listed a couple of things that… Just yelling the N-word? No, Your Honor. Why not? Well, this Court, I believe in 1971 in People v. Flanagan, as well as the Illinois Supreme Court in People v. Rabi or Rabi in 1968, both held that mere argument is insufficient to support a conviction for obstructing a peace officer. And that's all we have here. When the State was asked, you know, what amounted to obstruction here, the Funding Council listed berating, yelling. Things that fall under exactly what we're discussing cannot be sufficient for obstructing. And then in addition to that we have that my client was close enough to threaten the safety of Officer Vellante, but Officer Vellante doesn't testify to that fact. If the State's best evidence is… Doesn't the record show that he made a radio call to other police officers asking them to hurry up, essentially? Your Honor, I don't know police lingo. He didn't say that in explicit terms. If he did make some sort of call for backup, it would have been in police language, which it was never explicitly said, hey, I need help with this guy. Please come provide me backup. If this is true, wouldn't that show that he was concerned about the presence of Mr. Mann? Your Honor, concern about the presence of Mr. Mann is, once again, it's insufficient because we have to look at the acts of Mr. Mann. Was the officer reasonable? Which, again, he doesn't testify that he felt his safety was threatened, but if… Were there requests for Mr. Mann to back up? Apparently the video doesn't show that he backed up any, if much at all. There were requests made by Officer Valante that my client back up, but Officer Valante did not testify that my client repeatedly approached. He testified that my client was in a certain position and he moved to another position, which was five to six feet away, and from that position he did not move again. And all that my client is doing in that instance is arguing with the officer. So the state made a claim that I want to counter because it's not true that Mann told Ms. Bradley not to give her insurance. Mr. Mann is not engaging with Ms. Bradley at all during this interaction. He is expressing his frustrations with Officer Valante. There was no indication that he told Ms. Bradley, don't follow the officer's instructions, don't do this or that. And, in fact, after Ms. Bradley asks about the insurance to Mr. Mann, shortly after that is when Mr. Mann is arrested. Under People v. Mender, though, the court found there was obstruction where the defendant wouldn't turn around. I mean, how is that much different than what we've got here? Your Honor, in People v. Mender, the circumstances were much different where the threat of officer safety was higher. This is a more high-tension situation. You have this drunk, probably drunk, he's at a bar yelling at this officer pretty antagonistically, don't you think? You don't think so? Mr. Mann's language is antagonistic. It's abusive. But, again, that doesn't rise to that level. And to the extent that being outside of a bar drinking could create the situation for violence, Officer Valante didn't testify that he felt threatened. He doesn't have to feel threatened. The obstruction is only if it interferes or impedes the officer in the performance of his authorized duties. That's correct. But he was not able to complete this traffic stop. Your Honor, that was because of his own actions. First, choosing to turn away from the traffic stop to arrest Mr. Mann, and then it was because of the actions of Ms. Bradley, who got herself arrested. I think that's kind of a circular argument, because if he felt the need to turn around to address the person that was yelling at him, wasn't he being impeded? Wasn't he being impeded? Wasn't he being impeded if he felt the need to turn around and address the person that was yelling at him outside the bar? Your Honor, to the extent that Officer Valante felt impeded, Mr. Mann's conduct, which, again, was just yelling, arguing, cannot be an impediment. That isn't an impediment, particularly when all we're talking about is 60 seconds. People versus Maintenance said that the most important factor is the timing, the length of the delay. And then we look to the authorized act, and then we look to the nature of the obstructive act. This was 60 seconds. If there are no further questions. No other questions. Thank you. Just a second. Thank you. Okay, thank you both for your arguments here today. The matter will be taken under advisement. The bill is to be in order in due course.